JAMES BRIDGEFORD *v.* EDWARD W. BURBANK.

**Indemnity Bond—Release from Liability.**

> Where one signs an indemnity bond as surety for another who signs an appeal bond, he has a right to expect the appellant to prosecute his appeal in good faith, and if the person holding the indemnity bond, by purchase or otherwise, so far alters the situation as to make it to his interest to have the judgment affirmed, the indemnity bondsmen would thereby be released as to him.

**APPEAL FROM JEFFERSON CIRCUIT COURT.**

November 14, 1875.

OPINION BY JUDGE LINDSAY:

On the 24th day of July, 1867, Clark A. Smith as principal and James Bridgeford as surety, executed to Edward W. Burbank a penal bond in the sum of twelve thousand five hundred dollars. The stipulations of said bond are as follows:

"Whereas the above named Clark A. Smith has heretofore and until the 24th day of July, 1867, been a partner and member of the house of J. H. Oglesby & Co., of said New Orleans; and whereas the said Smith did on the twenty-fourth of July sell, assign, transfer and set over unto the said Edward W. Burbank all his right, title and interest in said house of J. H. Oglesby & Co.; and whereas said Burbank did in said agreement of sale and transfer assume all liabilities and responsibilities of said Smith in and to said house of J. H. Oglesby & Co., excepting only and fully any and all such responsibility and liability as to him, the said Smith, as might arise by reason of a certain bond given in the fifth district court of New Orleans, for the appeal to the Supreme Court of Louisiana, of a certain suit entitled *Lucien Harris v. H. G. Andrews & Co.*

"Now the condition of this bond is such that if the said Clark A.

Smith and the said James Bridgeford shall well and truly pay or cause to be paid unto the said Edward W. Burbank, his heirs, executors, and administrators, the one-half ($\frac{1}{2}$) amount of all sums which said Edward W. Burbank may at any time hereafter be condemned to pay by reason of his having signed as surety the said appeal bond in the case of Lucien Harris against H. G. Andrews & Co., now pending in the Supreme Court of Louisiana, at the time when such sum or sums may become due in the discharge of the obligation in such bond of appeal mentioned, and shall from time to time, and at all times hereafter, save, defend, keep harmless and indemnify the said Edward W. Burbank, his heirs, executors and administrators, and his and their goods and chattels, lands and tenements, of and from one-half pecuniary obligation on said bond of appeal, arising, then this bond and obligation, shall be void, and otherwise shall remain in full force and effect."

There were two appeal bonds executed in the case of *Harris v. Andrews & Co.*, the one upon the appeal of Andrews & Co., the defendants in the district court, and the other upon the appeal of J. H. Oglesby & Co., who had intervened or interpleaded in said suit, and asserted claim to certain property therein attached. Upon each of said bonds, the members of the firm of Oglesby & Co., either as a firm or in their individual capacities, were bound as principal obligors or as sureties, and upon each of them Burbank was bound as surety.

The first question arising in this case is, Which of these bonds was it intended that the obligation of Smith and Bridgeford should indemnify Burbank against? To a correct understanding of this inquiry, it is necessary to state briefly the facts attending the litigation, which resulted in the execution of two appeal bonds. Harris sued Andrews & Co. for large sums of money, and among other property attached in the hands of Oglesby & Co. was ninety-one bales of cotton, and in the hands of Summers, Brannin & Co., eighty-three bales of cotton. December 18, 1866, Andrews & Co. procured the release of the attachment as to said 174 bales of cotton, by the execution of a bond with J. H. Oglesby & Co. (said firm being then composed of Oglesby and Smith) as sureties. The penalty of said bond was $24,000, and its condition was that Andrews & Co. should satisfy such judgment as might be rendered against them. By reason of this bond, J. H. Oglesby & Co. were enabled to retain possession of the 91 bales of cotton then in their hands, and it seems that

Summers, Brannin & Co. retained the 83 bales of which they had possession.

In December, 1866, J. H. Oglesby & Co. filed in the suit of *Harris v. Andrews & Co.* a petition or intervention, claiming that as merchants they had the right to subject to the payment of a debt of $14,761.03, due them from Andrews & Co., the 91 bales of cotton in their possession, and that by virtue of some contract or agreement with Andrews & Co., they held a claim upon or an interest in the 83 bales held by Brannin, Summers & Co. Harris responded to said petition of intervention, setting up and relying on a preferred lien, which he claimed to hold as the assignee of the landlord of Andrews & Co. Upon the trial of the cause, Harris recovered judgment against Andrews & Co. for $25,000, with interest and costs, and the petition of Oglesby & Co. was dismissed.

The attorneys representing H. G. Andrews & Co. appealed from the judgment against their clients, and J. H. Oglesby, Clark A. Smith and Robert Burbank executed as sureties an appeal bond for said Andrews & Co. in the sum of $40,000. At the same time, Oglesby & Co. prosecuted an appeal from the judgment dismissing their petition of intervention, and executed a bond in the sum of $250, with Burbank as their surety. Bridgeford insists that he indemnified Burbank against loss or damage resulting from his suretyship on this last named bond, whilst Burbank insists that the indemnity is against the obligation arising upon the bond executed for Andrews & Co. The obligation of July 24, 1867, describes the responsibility or liability indemnified against, as such as "to him, the said Smith, might arise by reason of a certain bond given in the fifth district court of New Orleans, for the appeal to the Supreme Court of Louisiana of a certain suit entitled *Lucien Harris v. H. G. Andrews & Co.*" It obligates Smith and Bridgeford "to pay to Burbank one-half of all sums he may be condemned to pay by reason of his having signed as surety the said appeal bond in the case of Lucien Harris against H. G. Andrews & Co.," and to "keep him harmless and indemnify the said Edward Burbank of and from the one-half pecuniary obligation on said bond arising."

The language used seems to point unerringly to the bond executed on the appeal of H. W. Andrews & Co. That bond is described, certainly, with reasonable accuracy; and if there had been no bond executed by J. H. Oglesby & Co. on an appeal growing out of the judgment rendered in the suit of *Harris v. Andrews & Co.*, upon their petition of intervention, there would be no ground to question

that the bond of H. W. Andrews & Co. is the bond against the "necessary obligation," of which Smith and Bridgeford undertook to indemnify Burbank.

The bond of J. H. Oglesby & Co. does not come within the description given. It was not executed for the appeal to the Supreme Court of Louisiana of a certain suit, entitled Lucien Harris against H. G. Andrews & Co.; but for the appeal (in an original proceeding of that style) of the suit of *J. H. Oglesby & Co. v. Lucien Harris and H. G. Andrews & Co.* Upon the case as presented by the pleading and evidence, the court below rightly held that appellant undertook to save, defend and keep harmless the appellee, Burbank, from loss or damage arising out of his being bound for Smith on the bond of appeal for $40,000, executed for H. G. Andrews & Co.

We need not analyze the petition. It is not as concisely drawn as it might have been; the averments of facts are not as direct and specific as they should have been made; but it contains all of the necessary allegations to make out a cause of action. The conditions of the bond of indemnity are fully set out. It is alleged that the judgment in the suit of *Harris v. Andrews & Co.* was affirmed by the Supreme Court of Louisiana, and that upon proceedings in the district court, regularly had, upon the bond of appeal executed on behalf of H. G. Andrews & Co., Burbank was condemned to pay nineteen thousand one hundred thirty-one dollars, and was therefore compelled to pay, and did pay on account thereof, nine thousand five hundred sixty-five dollars and sixty-two cents. He avers that appellant failed, neglected and refused to save, defend and keep him harmless from the obligation of said bond as he had covenanted to do, and prays that he be compelled to indemnify him for his loss and damage so sustained, by the payment to him of said sum of $9,565.62.

Appellant insists that by the terms of the bond of indemnity he is only bound to pay to Burbank one-half the sum or sums that he, Burbank, has been compelled to pay. He agreed to pay to Burbank "the one-half (½) amount of all sums which said Edward W. Burbank may at any time be condemned to pay by reason of his, said Burbank, having signed as surety the said appeal bond," and from "time to time and at all times hereinafter, to save, defend and keep harmless and indemnify the said Edward W. Burbank * * * of and from one-half the pecuniary obligation on said appeal bond arising." Considering all the language used, it is evident that Burbank was to be paid more than one-half of any amount he might be

compelled to pay. The stipulation of the bond is that Smith and Bridgeford will pay one-half the sum or sums he shall "be condemned to pay;" and this stipulation is further explained to mean "the one-half pecuniary obligation on said bond of appeal arising." This construction accords with the circumstances attending the whole transaction.

Bridgeford proved by his witness, Davidson, that the defense of the suit by Harris was entrusted by H. G. Andrews & Co. to J. H. Oglesby & Co., and that they employed counsel and managed the case. Considering the facts proved by appellant, it may be assumed that the suit was defended and the appeal prosecuted at the instance and for the benefit of J. H. Oglesby & Co. In point of fact, Burbank was surety on the appeal bond for Oglesby and Smith, and not for Andrews & Co. They were utterly and hopelessly insolvent, and doubtless regarded the suit in the district court as a contest between Harris and Oglesby & Co. over the attached property, and a matter in which they had no special interest.

Oglesby & Co. filed in the district court, and, in the name of their insolvent debtors, executed the appeal bond, and prosecuted the appeal to the Supreme Court; and as between the members of that firm and Burbank, they were primarily liable on said bond; and this was the liability of Smith, in and to the said house of Oglesby & Co., that the parties excepted out of Burbank's undertaking to assume all the liabilities and responsibilities of Smith in and to said house.

In order, therefore, to hold Burbank harmless and to indemnify him against this excepted liability, it is necessary that Smith and Bridgeford shall pay one-half of the sum Burbank has been condemned to pay, that is, one-half the "pecuniary obligation" that arose against the firm of Oglesby & Co., composed as it was of Oglesby and Burbank, on said appeal bond, when the judgment of *Harris v. Andrews & Co.* was affirmed by the Supreme Court of Louisiana. We do not concur with the court below as to the amount of the "pecuniary obligation" that then arose against the new firm of Oglesby & Co. It was not the full amount of the judgment of *Harris v. Andrews & Co.*, although Harris, or his assignee, had the right to proceed on that bond and compel the obligors therein to pay the full amount of his judgment.

The appeal bond was a second or cumulative security to Harris. The bond to discharge the attachment upon which Oglesby & Smith, who composed the old firm of J. H. Oglesby & Co., were bound

as sureties, was the first security that had been given him. This bond secured to him $24,000, and he might have proceeded upon it for that amount, and then looked to the appeal bond for such balance as might remain unpaid. By the execution of this bond, the 83 bales of cotton held by Brannin, Summers & Co., and the 91 bales held by Oglesby & Co., were released. The bond was substituted for said cotton, and by reason of its execution, the proceeds of the ninety-one bales were applied to the payment of the debt due from Andrews & Co. to Oglesby & Co., and thus became the assets of the last named firm. The assets secured by the sale of the 91 bales of cotton were, of course, charged with the payment of so much of the claims of Harris as were secured by the attachment bond; and when Burbank purchased from Smith, the latter's interest in the house of Oglesby & Co., he took the proceeds of these 91 bales of cotton, subject to the contingent liability of having to surrender them in satisfaction of said bond. This fact he recognized when the firm of Oglesby & Co., of which he was then a member, consented that the proceeds of the 83 bales of cotton held by Brannin, Summers & Co. should be so applied. It was by the application, among other funds, of the proceeds of said 83 bales of cotton that the claims of Harris, or rather of his assignee, was reduced to the sum finally paid by Oglesby and Burbank, viz., $19,131.

The liability of Smith upon the attachment bond was not excepted out of the liabilities by Burbank; and he could not, by making payment on a judgment founded on the appeal bond, escape his liability upon the attachment bond, and shift it upon Bridgeford, the surety for Smith. The payment of the judgment founded on the appeal bond was a satisfaction of all claims or rights arising out of the attachment bond, but as between Burbank and Bridgeford, to the extent of the 91 bales of cotton, satisfied the judgment on the appeal bond. Burbank was paying his own debt and not that of Smith. Smith was bound on the appeal bond as between himself and Burbank, for one-half the balance due to Harris or his assignee, after the proceeds of the 174 bales of cotton had been applied to the satisfaction of his judgment. Hence, from the $19,131 paid by Oglesby & Co., the proceeds of the sale of the 91 bales of cotton should be deducted, and Bridgeford then held to account for one-half the balance.

As a further ground of defense, Bridgeford relies on the fact of Burbank (as a member of the firm of Oglesby & Co.) pending the appeal in the Supreme Court, and before the judgment against An-

drews & Co. was affirmed, becoming part owner thereof, as working, as matter of law, his release as surety on the bond of indemnity. He also charges that Oglesby & Co. fraudulently interfered to procure the affirmance of said judgment. The circumstances under which Oglesby & Co. acquired an interest in the judgment of Harris against Andrews & Co., are not such as to authorize the inference of bad faith upon the part of Burbank. His firm was compelled to accept the transfer of an interest in said judgment in satisfaction of a claim against a failing debtor, or else to lose the whole of a debt, contracted, so far as the record shows, without the slightest view upon their part of looking to said judgment as a security.

Notwithstanding this fact, however, if, by reason of this transfer, Burbank became so far interested in the Harris judgment as to make it his interest to have it affirmed, rather than reversed by the Supreme Court, Bridgeford ought not to be held bound on the bond of indemnity. When Bridgeford signed said bond he had the right to expect, and no doubt did expect Oglesby & Burbank to prosecute the Andrews & Co. appeal with good faith and reasonable diligence, and under the circumstances that was an implied contract between the parties to the bond of indemnity, that they would so prosecute it. Burbank had no right to so far alter the situation by agreeing, however innocently, to an interest in the appeal in the Supreme Court adverse to that of Bridgeford. He was in a limited sense the agent of Bridgeford to prosecute said appeal; and if by his own act or that of his firm, he acquired such an interest in the Harris judgment as to create in his bosom a conflict between self interest and the duty he owed to Bridgeford, and without notice to the latter of such change of interest, he permitted the cause to progress to a hearing in the Supreme Court, he thereby subjected Bridgeford to a risk that he could not have anticipated when he signed as surety for Smith. If there was such a change of interest (a question of fact upon which we express no opinion), Burbank necessarily lost all incentive to labor for the reversal of the judgment against Andrews & Co. He profited by the affirmance. He would have lost money had he succeeded in the attempt. He contracted with Bridgeford that he would work to reverse it. If, by the acquisition of the alleged interest, Burbank changed his attitude of himself and Bridgeford, and by such change increased the risk of the latter, he cannot complain that the surety, whose rights were disregarded and whose risk was increased, is thereby discharged from the obligations

of his contract of suretyship. *Mayhew v. Boyd,* 5 Md. 109; *Norton & Williams v. Roberts & Latham,* 4 Mon. 492.

Bridgeford is not bound to show actual injury. If he shows that the judgment of *Harris v. Andrews & Co.* was affirmed by the Supreme Court of Louisiana, and that Burbank profited by the affirmance, his defense is made out. Of course, if Burbank, by himself or through the agency of his firm, interfered to procure an affirmance of the judgment against Harris & Co., such interference operated to discharge Bridgeford, as a party indemnified cannot be allowed to be instrumental in bringing about the event, upon the happening of which the liability of the indemnitor depends. We need not decide whether the court erred in compelling the appellant to answer before a complete transcript of the proceedings in the Louisiana court was filed, as upon the return of the cause he may avail himself, by an amended answer, of any information acquired therefrom. The alleged error as to the admission of the statement of Dupey need not be considered, as the deposition of the absent witness will doubtless be taken before another trial of the cause.

As some of the rulings of the court below do not conform to the views herein expressed, the judgment is *reversed* and the cause remanded for a new trial upon principles consistent with this opinion.

*Lee & Rodman, Muir & Bijou, for appellant.*
*Hagan & Dupuy, for appellee.*